IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELADIO ACOSTA-RAMIREZ<br>VICTOR A. ALVAREZ-VALENTIN<br>LUIS M. ALBINO-IRIZARRY<br>ANA M. BONILLA-CRESPO<br>RAUL CARDONA-BALLESTER<br>ELLIOT A. CARDONA-PADUA<br>MELINDA Y. CARRERO-VILLARUBIA<br>NILSA CARRERO-VILLARUBIA<br>CAMEN L. CRESPO-CRESPO<br>JORGE A. CRUZ-ABREU<br>ARNALDO CUEVAS-TORRES<br>LORRAINE CHAPARRO-SANCHEZ<br>MARIA CHICO-CONCEPCION<br>HECTOR FELICIANO-FELICIANO<br>JEZABEL FIRPO-CANDELARIA<br>JOSE L. GALARZA-QUINTANA<br>ARNALDO GONZALEZ-GONZALEZ<br>DORIS M. GONZALEZ-QUIÑONES<br>YOLANDA JIMENEZ-PEREZ<br>JOSE O. JUSINO-HERNANDEZ<br>CARMEN LUGO-TROCHE<br>ILEANA MALDONADO-COLON<br>EDGARDO MANGUAL-CONCEPCION<br>MARILIAN MANGUAL-MALAVE<br>AILEEN MARRERO-TRAVERSO<br>NIRZA E. MARTINEZ-TORRES<br>AIDA N. MEDINA-MORALES<br>JUAN A. MEDINA-NUNCI<br>CHRISTIAN MENDEZ-RAMOS<br>JAIME E. DETRES-JUSTINIANO<br>INES ARCE-ORTIZ<br>CARMEN A. MUÑIZ-MUÑIZ<br>CARMEN L. NIEVES-ESTEVES<br>JUAN M. NUÑEZ-MARQUEZ,<br>BERNICE Z. ORTIZ-PEREZ<br>HIRAM J. OTERO-SAMALOT<br>HERIBERTO PEREA-VALLE<br>JOSE PEREZ-VALENTIN<br>LISSETTE PEREZ-VEGA<br>SHIRLEY PIÑEIRO-SUAREZ<br>ROBERTO QUINTANA-LAMBOY<br>YOLANDA RAMOS-AROCHO<br>MARITE RIOPEDRE-SILVA<br>ROSE M. RIOS-MORALES<br>ERNESTO RIVERA-CONCEPCION<br>DARY N. ROMAN-TRAVERSO<br>JOHANA ROSA-NIEVES<br>YULEIDA RUIZ-RUIZ<br>JOSIE VALENTIN-ADRIAN<br>ANTONIO VEGA-RAMOS<br>PORFIRIO VIROLA-CASTRO<br>SERGIO MARTINEZ-TORRES<br>ISABEL COLON-RIOS | CIVIL 10-2131CCC |

CIVIL 10-2131CCC                                                2

| |
|---|
| LIZZETTE CANCEL-GUZMAN<br>VANESSA CAMACHO-RIVERA<br>YALERY VERGARA-DE JESUS<br>RUTH ALCANTARA-GOMES<br>YASMIN PADILLA-CARLO<br>JOSE A. VAZQUEZ-MAS<br>YAMILCA BRACERO-CINTRON<br>CELIA BACO-RODRIGUEZ<br>MARIBEL RIOS-SANCHEZ<br>FERNANDO CRUZ-GONZALEZ<br>DAMARI VIRVET-PABON<br>IDA M. KERCADO-ANDINO<br>ANA M. GOMEZ-COTTO<br>PAULA GUADALUPE-PAGAN<br>JACKELINE LEON-NATAL<br>MARIA SANABRIA-SANTIAGO<br>CESAR RIVERA-GUZMAN<br>ELIZABETH RIVERA-MARCANO<br>ROSA RODRIGUEZ-FIGUEROA<br>RICARDA SANTIAGO-CHANZA<br>MARTA RAMOS-LEGRAND<br>JENNIFER MONTERO-ACEVEDO<br>SILVIA OTERO-ESTEVEZ<br>Plaintiffs<br>vs<br>BANCO POPULAR DE PUERTO RICO;<br>BPPR INSURANCE PROVIDER<br>Defendants |

**OPINION AND ORDER**

On November 18, 2010, plaintiffs filed an Amended Complaint against Banco Popular de Puerto Rico (hereinafter "BPPR" or "defendant BPPR") before the Court of First Instance of the Commonwealth of Puerto Rico, Mayaguez Part. seeking redress for their alleged wrongful termination under PR Law No. 80 of May 30, 1976, P.R. Ann Stat. tit. 29, § 85 *et. seq.* ("Law 80"). On November 19, 2010, defendant BPPR filed a Notice of Removal (D.E. #1) stating that plaintiffs were employed by Westernbank until April 30, 2010, date when it was closed due to insolvency and placed under the receivership of the Federal Deposit Insurance Corporation (FDIC-R). It further stated that plaintiffs' claims necessarily

CIVIL 10-2131CCC                              3

required construction of the Financial Institutions Reform Recovery and Enforcement Act (FIRREA), specifically of its provisions on exhaustion of administrative remedies, 12 U.S.C. § 1821(d)(13)(D) and analysis, under FIRREA, of the concept of receivership and the nature of the Purchase and Assumption agreement (P&A) between BPPR and FDIC-R to determine if BPPR was a successor employer.

Plaintiffs allege that BPPR was Westernbank's successor employer, and, therefore, liable for their severance for the time they were employed by Westernbank, and for the time they were temporarily employed by BPPR (D.E. #1).  On April 15, 2011, the Court granted the Federal Deposit Insurance Corporation's (hereinafter "FDIC-R" or defendant "FDIC-R") Motion to Intervene (D.E. #12 and 9) as Receiver and real party interest in Westernbank Puerto Rico.  Before the Court now is defendant BPPR's Motion for Summary Judgment seeking dismissal of the complaint in its entirety filed on August 26, 2011(**D.E. #13**), which the co-defendant FDIC-R  joined on August 30, 2011 (D.E. #19).[1]  Plaintiffs filed their response in a Consolidated Opposition to Requests for Summary Judgment and Motion to Dismiss (D.E. #26).  Defendants BPPR and FDIC-R filed their replies to plaintiffs' response in Opposition to Requests for Summary Judgment and Motion to Dismiss (D.E. #34 and 40).

Defendant BPPR's Motion for Summary Judgment seeks dismissal with prejudice of Plaintiffs' claims on several grounds: (1) BPPR is not liable as to plaintiffs' employment termination with Westernbank because BPPR's acquisition of some of Westernbank's assets and deposits did not turn BPPR into plaintiff's successor employer.  (2) BPPR is not the proper party to respond to plaintiffs' severance requests as to their employment termination from Westernbank.  (3) Plaintiffs' reference to Law 80 is unsuitable inasmuch as such statute is not applicable to plaintiffs' fixed-term employment with BPPR.  The plaintiffs in the instant case (other than plaintiff Fernando Cruz-González) were never hired

---

[1]On October 24, 2011, the FDIC filed a Motion to Dismiss (D.E. #24) which BPPR joined on November 21, 2011 (D.E. #32).

CIVIL 10-2131CCC                                   4

by BPPR for an indefinite term.  (4) Some of the plaintiffs voluntarily resigned to their temporary employment with BPPR before their contracts expired.  (5) Some of the plaintiffs waived any and all claims related to their temporary employment with BPPR, and/or their termination, by means of an agreement and general release subscribed with BPPR when their employment relationship with such entity ended. (6) Plaintiff Fernando Cruz-González was terminated for just cause under Law 80.

## I.   Summary Judgment Standard

Summary Judgment "is proper if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law."  Rule 56 of the Federal Rules of Civil Procedure; Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina Vargas, 168 F.3d 42, 45 (1st Cir. 1999).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala,124 F.3d 298, 306 (1st Cir. 1997).   The nonmoving party must establish the existence of at least one relevant  and material fact in dispute to defeat such a motion. Brennan v. Hendrigan, 888 F.2d 129 (1st Cir. 1989).  The purpose of a summary judgment motion is to "pierce the boilerplate of the pleadings and assay the parties proof in order to determine whether trial is actually required."  Wynne v. Tufts University, 976 F.2d 791, 794 (1st Cir. 1992). The Court must look at the record in the light most favorable to the non-moving party; however the Court need  not rely on unsubstantiated allegations.

To defeat a motion for summary judgment, evidence offered by non-movant "must be significantly probative of specific facts."   Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008); Pérez v. Volvo Car Corp., 247 F.3d 303, 317 (1st Cir. 2001). We may ignore "conclusory allegations, improbable inferences and unsupported speculation. Prescott, at 40.  A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has

CIVIL 10-2131CCC                              5

the potential of determining the outcome of the litigation. The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial." [A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995). That is, the non-moving party may only overcome the motion with evidence sufficient to raise a genuine issue of fact that is both relevant and material. See Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988); Cruz v. Crowley Towing, 807 F.2d 1084 (1st Cir. 1986). That is, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion [...]." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

On issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is "merely colorable" or "not significantly probative". Rather, the nonmovant must present definite, competent evidence to rebut the motion. Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993), citing Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). Summary judgment is appropriate even when elusive concepts like motive or intent are in play if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Feliciano v. El Conquistador, 218 F.3d 1(1st Cir. 2000); Medina Muñoz v. R.J. Reynold Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Therefore, the nonmoving party's failure to advance evidence establishing the essential elements of the cause of action, and for which they have the burden of proof, warrants the dismissal of the case through summary judgment. Celotex v. Catrett, 477 U.S. 37 (1986).

II.    **Local Rule 56**

Local Rule 56(b) of the District Court of Puerto Rico requires a party who moves for a summary judgment to submit, in support of the motion, a "separate, short and concise

CIVIL 10-2131CCC                                          6

statement of the material facts set fourth in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.  Each fact asserted in the statement shall be supported by a record citation.

Once movant complies with this directive, a party opposing the motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement  shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact  is admitted, shall support each denial or qualification by a record citation as required by the rule." See Local Rule 56(c).

The First Circuit has consistently stated that, in the context of Local Rule 56(e), "parties ignore [it] at their peril" and that "failure to present a statement of disputed facts embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." Cosme Rosado v. Serrano Rodríguez,360 F. 3d 42, 45 (1st Cir. 2004);   Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2001).

### III.    **Law 80**

Puerto Rico Law 80 prohibits dismissal of employees without just cause. Hoyos v. Telecorp Communications, Inc., 488 F.3d 1, 6 (1st Cir. 2007).  Under Law 80, once an employee proves that he was discharged and alleges that his dismissal was unjustified, the employer must establish by a preponderance of the evidence that the discharge was for good cause.

The first section, codified in 29 L.P.R.A. § 185a, provides the method of calculating the severance pay for discharge from employment without just cause.  Said section provides in pertinent part:

. . .

CIVIL 10-2131CCC                                           7

      Notwithstanding what is provided in the first paragraph of this section, the mere fact that an employee renders services under a fixed term contract, in itself, shall not have the automatic effect of depriving him/her of the protection of §§ 185a-185m of this tittle, if practice and circumstances involved or other **evidence in the contracting were of such a nature that they tend to indicate the creation of an expectation of continuity in employment**, or appears to be a bona fide employment contract for an indefinite period of time. In these cases, the employees thus affected shall be deemed to have been contracted for an unspecific period of time. Except when it concerns employees contracted for a certain bonafide term, or for a certain bonafide project, every separation, termination, or dismissal of employees contracted for a certain term, or a certain project or job, or the non-renewal of his/her contract, shall be presumed to constitute an unjust dismissal governed by §§ 185a-185m of this title.

The next section, 29 L.P.R.A. § 185b, sets forth a list of reasons that constitute just cause for discharge, and, therefore, do not require any severance payment under the law. Said section provides, in pertinent part:

      Good cause for the discharge of an employee from an establishment shall be understood to be:

      (a)    That the worker indulges in a pattern of improper or disorderly conduct.

      ...

      (d)    <u>Full, temporary or partial closing of the operations of the establishment</u>. Provided, [t]hat, in those cases in which the company has more than one office, factory, branch or plant, the total, temporary or partial closing of any of these establishments will constitute just cause for dismissal pursuant to the Article.

      ...

Because plaintiffs have alleged that defendant BPPR is liable for being Westernbank's successor employer, we must also consider 29 L.P.R.A. § 185f, which states:

      In the case of transfer of a going business, if the new acquirer continues to use the services of the employees who were working with the former owner, such employees shall be credited with the time they have worked in the basis under former owners. In the event that the new acquirer chooses not to continue with the services of all or any of the employees and hence does not become their employer, the former employer shall be liable for

CIVIL 10-2131CCC                              8

> the compensation provided herein, and the purchaser shall retain the corresponding amount from the selling price stipulated with respect to the business. In case he discharges them without good cause after the transfer, the new owner shall be liable for any benefit which may accrue under §§ 185a-185m of this title to the employee laid off, there being established also a lien on the business sold, to answer for the amount of the claim.

(Official translation, our emphasis).

## IV.    Findings of Fact

In support of its motion for summary judgment, defendant BPPR presented a statement of uncontested material facts supported by proper documentary evidence. Plaintiffs on the other hand did not contest the facts and failed to properly support their contentions with citations to the record. Their factual statements are devoid of evidentiary support. The application of the standard discussed herein to the case leads to the sole conclusion that there are no genuine issues of material facts as to the claim and only questions of law remain. The material facts relevant to the issues of law are as follows:

1.      On April 30, 2010, the Office of the Commissioner of Financial Institutions (OCFI) closed Westernbank because it was insolvent, and appointed the FDIC to serve as receiver (D.E. #1, Exhibit B), (D.E. #13, Exhibit I). In that same date, the FDIC-R notified all of Westernbank's employees that their employment was terminated effective immediately and advised them of their right to submit any claims they might have to the FDIC under the statutory administrative claims process established by 12 U.S.C. § 1821(d)(3)-(13) (D.E. #13, Exhibit I).

2.      The FDIC-R exercised its option to preserve much of the failed bank's business operations through the implementation of a Purchase and Assumption ("P&A") transaction with a healthy financial institution, namely, an "assuming bank" (D.E. #1, Exhibit D).

3. The FDIC-R entered into a P&A agreement with BPPR, whereby BPPR assumed the insured deposits of Westernbank, and acquired certain assets formerly held by

CIVIL 10-2131CCC                              9

Westernbank (D.E. #1, Exhibit D).  BPPR did not assume or acquire any obligation to Westernbank's employees under the P&A agreement; the P&A agreement specifically provides that any such liabilities remained with the FDIC-R (D.E. #1, Exhibit D, ¶¶ 4.8 and 12.1).  As part of the P&A agreement, the FDIC agreed to indemnify BPPR for certain liabilities that BPPR did not assume (D.E. #1, Exhibit D, ¶ 12.1).[2]

  4. All 76 plaintiffs worked for Westernbank at the time it was closed by the OCFI. Some of the plaintiffs began their employment relationship with Westernbank as early as 1978, while others as recently as 2005 (D.E. #13. Exhibit I).

  5. Between April 30 and May 3, 2010, most of the plaintiffs signed temporary employment agreements with BPPR, before the commencement of their respective first working days (D.E. #1, Exhibits A and E, D.E. #13, Exhibit I0).

  6. On April 30, 2010 the following plaintiffs signed temporary employment agreements with BPPR: Víctor Alvarez-Valentín; Yamilca Bracero-Cintrón; Elliot A. Cardona-Padua; Melinda Y. Carrero-Villarubia; Maria Chico-Concepción; Fernando Cruz-González; Arnaldo L. Cuevas-Torres; Lorraine Chaparro-Sánchez; Jaime Destres-Justiniano; José Galarza-Quintana; Ana M. Gómez-Cotto; Doris M. Gónzalez-Quiñones; Paula Guadalupe-Pagán; Yolanda Jiménez-Pérez; José Jusino-Hernández; Ida M. Kercadó-Andino; Jackeline León-Natal; Camen Lugo-Troche; Ileana Maldonado-Colón, Edgardo Mangual-Concepción; Nirza Martínez-Torres; Sergio Martínez-Torres; Aida Medina-Morales; Juan A. Medina-Nunci; Jennifer Montero-Acevedo, Carmen Nieves-Esteves, Silvia Otero-Esteves; Hiram Otero-Samalot; Lissette Pérez-Vargas; Shirley Piñeiro-Suárez; Yolanda Ramos-Arocho; Marta Ramos-Legrand; Maritere

---

  [2][. . .] (3) claims based on the rights of any present or former director, officer, employee or agent as such of the Failed bank or any Subsidiary or Affiliate of the Failed Bank;

  (4) claims based on any action or inaction prior to Bank Closing of the Failed Bank, its directors, officers, employees or agents as such Subsidiary or Affiliate; [. . .].

CIVIL 10-2131CCC                          10

Riopedre-Silva; César O. Rivera-Guzmán; Elizabeth Rivera-Marcano; Dary Román-Traverso; Johana Rosa-Nieves; María del C. Sanabria-Santiago; Ricarda Santiago-Chanza; Josie Valentín-Adrián; and Damaris Viruet-Pabón (D.E. #13, Exhibit I and D.E. #23, Exhibits II-XLII).

   7.   On May 1, 2010 the following plaintiffs signed temporary employment agreements with BPPR: Eladio Acosta-Ramírez; Luis M. Albino-Irizarry; Ruth E. Alcántara-Gómez; Celia Bacó-Rodríguez; Ana M. Bonilla-Crespo; Nilsa Carrero-Villarubia; Isabel C. Colón-Ríos; Carmen L. Crespo-Crespo; Jorge A. Cruz-Abreu; Héctor Feliciano-Feliciano; Jezabel Firpo-Candelaria; Aileen Marrero-Traverso; Christian Méndez-Ramos, Bernice Ortiz-Pérez; Yasmín Padilla-Carlo; Heriberto Perea-Valle; Roberto Quintana-Lamboy; Rose M. Ríos-Morales; Maribel Ríos-Sánchez; Rosa A. Rodríguez-Figueroa; José Vázquez-Más; Antonio Vega-Ramos; and Yarely Vergara-de Jesús (D.E. #13, Exhibit I and D.E. #23, Exhibits XLIII-LXV).

   8.   On May 2, 2010, the following plaintiffs signed temporary employment agreements with BPPR: Raúl Cardona-Ballester, Marilian Mangual- Malavé; Juan M. Núñez-Márquez; Porfirio F. Virola-Castro; Carmen A. Muñiz-Muñiz; Yuleida Ruiz-Ruiz; Ernesto Rivera-Concepción; and Lizzete Cancel-Guzmán (D.E. #13, docket entry 23, Exhibits LXVI-LXXIII).

   9.   On May 3, 2010, plaintiff Inés Arce-Ortiz signed a temporary employment agreement with BPPR ( D.E. #13, Exhibits I and D.E. #23 Exhibit LXXIV).

   10.   On June 17, 2010, plaintiff Vanessa Camacho-Rivera, signed a temporary employment agreement with BPPR (D.E. #13, Exhibit I and D.E. #23, Exhibit LXXV).

   11.   Each plaintiff acknowledged in the temporary employment agreements that he/she was being hired by BPPR to perform a temporary task. Plaintiffs further certified that their employment relationship with Westernbank had ceased permanently as a result of the bank's closing by the OCFI, and that, consequently, Westernbank had ceased to exist as

an ongoing business. Plaintiffs also recognized that their temporary employment relationship with BPPR was new, and did not constitute a continuation of their prior employment relationship with Westernbank, thereby, expressly admitting that BPPR, as well as its parent company, affiliates and subsidiaries, were not their successor employer (D.E. #23, Exhibits II-LXXV).

12.     The following plaintiffs never became employees of BPPR: José Pérez-Valentín and Arnaldo González-González (D.E. #23, Exhibit I).

13.     The following 10 plaintiffs voluntarily resigned to their employment with BPPR: Ana M. Gómez resigned on May 10, 2010; Arnaldo L. Cuevas-Torres resigned on May 15, 2010; César O. Rivera-Guzmán resigned on May 18, 2010; Hiram Otero samalot resigned on June 9, 2010; Elizabeth Rivera-Marcano resigned on June 9, 2010; Roberto Quintana-Lamboy resigned on June 25, 2010; Ileana Maldonado-Colón resigned on June 26, 2010; Lorraine Chaparro-Sánchez resigned on June 30, 2010; José Galarza-Quintana resigned on July 1, 2010; and Damaris Viruet-Pabón resigned on July 8, 2010 (D.E. #13, Exhibit I, and D.E. #23, Exhibits LXXVI-LXXXV).

14.     The following 27 plaintiffs signed an *Agreement and General Release*, in which they free and voluntarily waived any claim related to their temporary employment with BPPR, or its termination, against BPPR: Heriberto Perea-Valle; Maritere Riopedre-Silva; Yuleida Ruiz-Ruiz; Ernesto Rivera-Concepcion; Juan A. Medina-Nunci; Jaime Destres-Justiniano; Isabel C. Colón-Ríos; Sergio Martínez-Torres; Vanessa Camacho-Rivera; Lizzette Cancel-Guzmán; Yalery Vergara-de Jesús; Ruth E. Alcántara-Gómez; Yasmin Padilla-Carlo; José Vázquez-Más; Celia Bacó-Rodríguez; Maribel Ríos-Sánchez; Ida M. Kercadó-Andino; Paula Guadalupe-Pagán; Jackeline León-Natal; María del C. Sanabria-Santiago; Rosa E. Rodríguez-Figueroa; Ricarda Santiago-Chanza; Marta Ramos-Legrand; Jennifer Montero-Acevedo; Silvia Otero-Esteves; Inés Arce-Ortiz; and Yamilca Bracero-Cintrón. (D.E. #13, Exhibit I, and D.E. #23, Exhibit CXVIII and LXXXVI-CXII).

CIVIL 10-2131CCC                                     12

15. In their releases, each plaintiff acknowledged that he/she worked for BPPR on a temporary basis, and that he/she was never a regular employee of BPPR (D.E. #23, Exhibits LXXXVI-CXII). These plaintiffs certified that their employment termination with BPPR was justified, and was not motivated by an illegal animus (D.E. #23, Exhibits LXXXVI-CXII). Plaintiffs further recognized that they were not entitled to the remedy provided by Law 80 of May 30, 1976 ("Law 80") inasmuch as they worked for BPPR on a temporary basis (D.E. #23, Exhibits LXXXVI-CXII).

16. BPPR provided the plaintiffs with an amount of time within which they had to decide whether to sign the release. The release also provided for a seven day rescission period. The plaintiffs who chose to execute the release had seven days from the date of execution within which they could revoke. None of the plaintiffs exercised his/her right of rescission within the allotted time-frame. The plaintiffs were also advised, both orally and in writing, of their right to consult with counsel before making a decision as to whether signing the releases (D.E. #13, Exhibit I and D.E. #23, Exhibits LXXXVI-CXII).

17. Each of these plaintiffs received from BPPR an amount of money, even though BPPR had no obligation to pay them any amount at all (D.E. #23, Exhibits LXXXVI-CXII).

18. On April 30, 2010, plaintiff Fernando Cruz Gonzalez (hereinafter "Cruz") was recruited by BPPR as a temporary employee by means of a temporary employment agreement (D.E. #13, Exhibit I and D.E. #23, Exhibit VII). On said date Cruz received a copy of BPPR's *Employee manual* (D.E. #23, Exhibits CXIII and CXIX).

19. On August 2, 2010, Cruz became a regular employee of BPPR. Specifically, he was hired as *Senior Bank Representative* for the San Juan region (D.E. #23, Exhibits CXIV and CXIX). Shortly thereafter, Cruz began taking training that BPPR requires of all of its new employees. The first training he was scheduled to take was the *Bank Representative Training*, which was scheduled for August 6 through August 12, 2010. Such training was given in the offices of the bank's *Development and Organizational Consulting*

CIVIL 10-2131CCC                                    13

*Department* in Santurce, Puerto Rico (D.E. #23, Exhibits CXV, CXVI, CXVII, CXVIII and Exhibit CXIX).

20.     On August 6, 2010, Cruz was disrespectful to Human Resources Specialist Julie Ann Rodríguez-Sepúlveda, who was offering the referred training on that date (docket entry 23, Exhibits CXV, CXVI, CXVII, CXVIII, CXIX).  His actions consisted of: (1) constantly scoffing Rodríguez' abilities; (2) constantly interrupting the training; (3) continuously turning to other employees, claiming he was better prepared than Rodríguez to offer the trainings; and (4) laughing at her on one occasion when she abruptly changed the subject of the training (D.E. #23, Exhibits CXV, CXVI, CXVII, CXVIII and CXIX).

21.     During the lunch break of August 6, 2010, another employee, Bienvenido Rafael Amparo, overheard Cruz telling other employees that he was much more fit than Rodríguez to offer said training and mocking her abilities (D.E. #23, Exhibit CXV).  He immediately informed Rodríguez of the situation, who, in turn, observed this conduct from Cruz during the afternoon session on that date (D.E. #23, Exhibits CXV and CXVI).

22.     After the training was over, Rodríguez confronted Cruz with this information and asked him to change his attitude because it was inappropriate and disrespectful (D.E. #23, Exhibit CXVI).  Rodríguez felt demeaned, tense, nervous, and humiliated because of the situation (D.E. #23, Exhibit CXVI).

23.     That same afternoon, Rodríguez informed her direct supervisor, Emilia Vazquetelles, Manager in the *Development and Organizational Consulting Department*, of the situation.  Vazquetelles, then informed Inez García, Manager of the *Labor Consulting Department* at BPPR and Wanda Cacho, *Human resources Administrative Officer* of the San Juan Region at BPPR of Cruz' actions (D.E. #23, Exhibits CXVI, CXVII, CXVIII, and CXIX).

24.     Upon closely studying the situation, García and Cacho, from BPPR's Labor Consulting Department determined that Cruz's disrespectful attitude during the trainings

CIVIL 10-2131CCC                    14

breached Norm 3 of the bank's Norms of Conduct, contained in BPPR's Employee Manual, which states as follows:

> *Observe proper conduct, respect and courtesy to customers, potential customers, suppliers, coworkers or anyone else. Avoid excessive familiarity, teasing, profanity or disrespectful and inappropriate jokes or comments, such as those containing racial, sexual, sexual preference, political, religious, national origin, age, color, social status, marriage, eligible for status as a veteran or disability.*

(D.E. #23, Exhibits CXVIII, CXIX, CXX).

25.    The consequence of breaching said norm is the immediate termination. For such reason, pursuant to Norm 3, on August 13, 20110, Cruz was terminated from his employment with BPPR (D.E. #23, Exhibit CXX).

26.    The decision to terminate Cruz was made by Cacho and García. He was informed of his termination by Cacho and Vazquetelles (D.E. #23, Exhibits CXVII, CXVIII and CXIX).

## V.    Conclusions of Law

Plaintiffs have brought this suit under Puerto Rico Law 80. The only cause of action under this law is for unjust termination of employment, and the only remedy is severance pay calculated according to §185a. <u>Otero Burgos v. Inter American University</u>, 558 F.3d 1-2 (1st Cir. 2009); <u>Corrada Betances v. Sea-land Service, Inc.</u>, 248 F.3d 40, 44 n.4 (1st Cir. 2001). That is, there is no entitlement to any other remedy, and no severance pay is required when there is just cause for discharge and the employer has complied with any other applicable requirements in carrying out the termination.

**(1)    BPPR's argument of not being liable under Puerto Rico Law 80 for plaintiffs' employment termination with Westernbank because they were not Westernbank's successor employer**.

Puerto Rico Law 80§ 185f, regulates the payment of severance when an ongoing business is transferred. The purpose of this provision is to grant the employee retained by the purchaser of an ongoing business the right to claim the years worked for the former

CIVIL 10-2131CCC						15

employer if he suffers an unjust dismissal.  Adventist Health v. Mercado, 171 D.P.R. 255 (2007).  However, this doctrine requires, at a minimum "a continuity in the identity of the business before and after the change."  Rodríguez v. Urban Brands, 167 D.P.R. 509, 516 (2006) (quoting J.R.T. v. Coop. Azucarera, 98 P.P.R. 307, 316 (1970)).  To determine if a company is the successor to another, one must focus on whether the new company has "acquired substantial assets of its predecessor **and continued, without interruption or substantial change, the predecessor's business operations**."  Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1986) (quoting Golden State Bottling Co. v. NLRB, 414 U.S. 168, 184 (1973)); Asseo v. Centro Médico del Turabo, Inc., 900 F.2d 445, 451 (1st Cir. 1990).

	The record undisputedly demonstrates that Westernbank was declared insolvent, involuntarily liquidated and closed by the OCFI.  The OCFI designated the FDIC as receiver of Westernbank's assets.  Westernbank's employees were terminated as a result of liquidation and closing of the bank.  The terminations relate back to the instant Westernbank was closed, before BPPR's arrangement with the FDIC-R was consummated.  Plaintiffs were notified of their right to submit any claims they might have to FDIC-R in accordance with its administrative claims process, as set forth in 12 U.S.C. § 1821 (d)(3).[3]  When BPPR entered into the agreement with FDIC-R, Westernbank had already ceased doing business. BPPR did not continue with Westernbank's business operations.  Plaintiffs stated in their contracts with BPPR that their employment relationship with BPPR was new, and did not constitute a continuation of their prior relationship with Westernbank, even declaring that BPPR, its parent company, affiliates and subsidiaries were not Westernbank's successor employer.  BPPR's acquisition of some of Westernbank's assets and deposits by means of the transaction executed with FDIC-R, did not turn BPPR into the successor of

---

	[3]All of the  plaintiffs in this case failed to comply with this administrative claims process.

CIVIL 10-2131CCC                            16

Westernbank. Consequently, BPPR is not plaintiffs' successor employer and is not liable as such under Law 80 for plaintiff's employment termination with Westernbank. Furthermore, Westernbank's closing of all its operations in Puerto Rico, constitute a full, permanent closing, which under Law 80, 29 L.P.R.A. § 185b(d), is just cause for termination.

> **(2) BPPR's argument of not being the proper party to respond to plaintiffs' severance requests as to their employment termination with Westernbank.**

Having established that BPPR was not Westernbank's successor employer, BPPR's potential liability is limited to the issues which it expressly recognized liability in the Purchase and Assumption Agreement (P&A) it entered with FDIC-R. The FDIC-R, as receiver of failed institutions, has broad discretion to conduct P&A transactions "in its sole discretion and upon such terms and conditions as the [FDIC] may prescribe." 12 U.S.C. § 1823 (c)(2)(A). The record indicates that in the Purchase and Assumption Agreement, BPPR did not agree to respond to claims by Westernbank's former employees related to their employment with Westernbank. To the contrary, the Purchase and Assumption Agreement specifically provides that any such liabilities remained with the FDIC. All liabilities related to those years of service were retained by the FDIC-R pursuant to federal statutory authority.[4]

> **(3) BPPR's argument of not being liable under Puerto Rico Law 80 for the period of time they worked for BPPR**.

Law 80 is construed as providing an exclusive legal remedy for employees hired for an indefinite period of time. Hernández Barreto v. ITT World Directories, Inc., 62 F. Supp. 2d 387, 395 (1999). An employee hired for a fixed term or for the performance of a particular work is not within Law 80 protection. Soc. de Gananciales v. Vélez & Asociados, 145 D.P.R. 508 (1998). However, the statute provides that the fact that an employee renders services under a fixed-term contract does not automatically preclude

---

[4] The receiver is the legal successor under the Financial Institutions Reform Act (FIRREA) to "all valid obligations of the insured depository institution." 12 U.S.C. § 1821(d)(2)(H).

him/her from the protections of Law 80 if the circumstances indicate that the employee had a reasonable expectation that he/she would continue to be employed by the employer. In these cases, the employees shall be considered hired for an indefinite term and thus, within the protection of Law 80.

BPPR has presented evidence that all plaintiffs except Fernando Cruz Gonzalez,[5] were hired for a temporary fixed term. The employment contract language is clear in that plaintiffs' employment relationship with BPPR was temporary, stating that each position was temporary in nature, and each plaintiff was hired to perform a specific temporary job. Plaintiffs' response was limited to stating that "the inclusion of employees <u>hired for a determined period of time</u> in Act 80, *supra*, was done thru Act 7 of March 7, 1988." Plaintiffs have not presented evidence that would indicate the employee had a reasonable expectation that he/she would continue to be employed by the employer, in which case he/she would be considered to have been hired for an indefinite term and, thus, within Law 80's remedy. Consequently, all plaintiffs, except for Fernando Cruz Gonzalez, are precluded from the protections of Law 80.[6]

### (4) BPPR's argument that Plaintiff Fernando Cruz Gonzalez was terminated for just cause under Law 80.

The record indicates that plaintiff Fernando Cruz Gonzalez is the only plaintiff who became a regular employee of BPPR. Therefore, he is the only plaintiff to whom Law 80 applies as to his employment relationship with BPPR. The only cause of action under this law is for unjust termination of employment, and the only remedy is severance pay. No severance pay is required when there is just cause for discharge and the employer has

---

[5]The record indicates that plaintiff Fernando Cruz-González is the only plaintiff that became a regular employee of BPPR.

[6]Defendant BPPR also presented evidence that some plaintiffs voluntarily resigned to their temporary employments, and some plaintiffs signed an Agreement and General Release in which they freely and voluntarily waived any claims against BPPR related to their employment with, or termination from, the bank.

CIVIL 10-2131CCC					18

complied with any other applicable requirements in carrying out the termination. As previously stated, Section 185(b) of Law 80 sets forth a list of several specific reasons that constitute just cause for dismissal. The violation of the rules of conduct established by the employer is deemed a justified reason for the termination of an employee, as long as the employer can demonstrate that: (1) the company's rules are reasonably related to the operation of the business, (2) the employee was provided with copy of the employer's rules and norms, and (3) the employee violated such rules. Rivera Aguila v. Kmart Puerto Rico, 123 D.P.R. 599 at 613-614 (1989); Rivera Torres v. Pan Pepín, Inc., 161 D.P.R. 681 (2004); Justino Figueroa v, et als. v. Walgreens, 155 D.P.R. 560 (2001). As a general rule, Law 80 does not favor terminating an employee as a sanction for a first offense. However, Law 80 does not preclude termination as a sanction for an isolated first offense when the intensity of the fault requires it in order to preserve the adequate functioning of the business and it would be negligent for the employer to await its reiteration to dismiss the employee. Secretario del Trabajo v. I.T.T., 108 D.P.R. 536 (1979). An employer may dismiss an employee as a sanction on the first fault or offense if, because of the seriousness and potential harm of the conduct in question, the order, safety or efficiency of the establishment has been placed at risk. Secretario del Trabajo v. I.T.T. *supra* ; Rivera Torres v. Pan Pepín, Inc., *supra*.

	Defendant BPPR evidence in support of Cruz dismissal consists of unsworn declarations of other BPPR employees which establish that Cruz was disrespectful to Human Resources Specialist Julie Ann Rodríguez-Sepúlveda, who was offering him training. The record indicates that Cruz actions consisted of: (1) constantly scoffing Rodríguez abilities, (2) constantly interrupting the training, (3) continuously turning to other employees, claiming he was better prepared than Rodríguez to offer the training, and (4) laughing at her on the occasion when she abruptly changed the subject of the training. The record further indicates that Inez García, Manager of the Labor Consulting Department, and Wanda

CIVIL 10-2131CCC                              19

Camacho, Human Resources Administrative Officer, upon closely studying the situation determined that Cruz' disrespectful attitude during the trainings breached Norm 3 of the bank's Norms of Conduct, contained in BPPR's Employee Manual.  The Manual states that the consequence of breaching said norm is the immediate termination of employment.

Plaintiffs did not address BPPR's arguments that Cruz's termination from BPPR was for just cause under Law 80.  Plaintiffs' opposing statement of facts averred  without making reference to any evidence, that Cruz was not disrespectful towards his coworker.  Plaintiffs' failure to support their conclusory allegation with a proper reference to the record fails to dispute BPPR's factual basis for Cruz termination.  BPPR has established by the evidence presented that Cruz discharge was for good cause and, thus, Cruz is not entitled to the remedies provided by Law 80.

Based on the determination that there is no genuine issue as to any material fact and that as a matter of law defendant BPPR is entitled to summary judgment having found that plaintiffs are not entitled to severance pay under Law80, 29 L.P.R.A. §§ 185, et seq.

After carefully considering the motion for summary judgment, the opposition and the replies, this Court GRANTS defendant BPPR motion for summary judgment (**D.E. #13**).

SO ORDERED.

At San Juan, Puerto Rico, on March 30, 2012.

S/CARMEN CONSUELO CEREZO
United States District Judge